Quarles & Brady LLP
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200

Eric B. Johnson (#020512)
eric.johnson@quarles.com
Catherine Guastello Allen (#024697)
catherine.guastello@quarles.com

*Attorneys for Tyco Fire Products LP*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Grosch and Shelagh Grosch, | Case No. _____ |
| Plaintiffs, | |
| vs. | **NOTICE OF REMOVAL BY DEFENDANT TYCO FIRE PRODUCTS LP** |
| Tyco Fire Products, LP, Matlick Enterprises, Inc., Kidde Fenwal Inc., and National Foam Inc., | |
| Defendants. | |

Defendant Tyco Fire Products LP ("Tyco"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of Arizona in and for the County of Maricopa ("Maricopa Superior Court") to the United States District Court for the District of Arizona. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

QB\81917830.1

# PRELIMINARY STATEMENT

1.    Plaintiffs, Matthew Grosch and Shelagh Grosch, seek to hold Tyco and certain other Defendants liable based on their conduct in designing, manufacturing, marketing, and/or selling aqueous film-forming foam ("AFFF") that Mr. Grosch allegedly used and was exposed to in his work as a firefighter for the City of Phoenix Fire Department ("PFD"), thereby allegedly causing him to develop testicular cancer.

2.    Recent discovery in this case has revealed that at least some of the AFFF that gives rise to Plaintiffs' claims was designed, manufactured, and supplied by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF").  Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design, manufacture, and distribution of MilSpec AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016).  Numerous courts, including the federal court overseeing the *In re AFFF Product Liability Litigation* MDL (the "MDL") that is pending in the District of South Carolina, have held that AFFF manufacturers have properly removed cases on the ground that the plaintiffs' claims plausibly arise at least in part from the use of MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *4 (W.D. Mich. Jan. 6, 2021); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.* No. 2:18-mn-2873, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019) ("*AFFF I*"); *Ayo v. 3M Comp.*, No. 18-cv-0373, 2018 WL 4781145, at *6-15 (E.D.N.Y. Sept. 30, 2018).  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

**PLAINTIFFS' COMPLAINT**

3.    Plaintiffs filed this action on January 4, 2022 in Maricopa Superior Court, bearing case number CV2022-000124. They filed an Amended Complaint on March 14, 2023. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit A**. The Amended Complaint is the currently operative statement of Plaintiffs' claims.

4.    Plaintiffs generally allege that Defendants (including Tyco) have designed, manufactured, marketed, and sold AFFF products containing per- and polyfluoroalkyl substances (PFAS), including perfluorooctanoic acid (PFOA), perfluorooctane sulfonate (PFOS), compounds that degrade into PFOA or PFOA, and/or other unspecified PFAS. Plaintiffs allege that Mr. Grosch used Defendants' AFFF products during his employment with the PFD, and that his exposure to PFAS in the AFFF caused his testicular cancer and the damages resulting from it.

5.    The Amended Complaint asserts claims for strict products liability-design defect and failure to warn (Am. Complaint ¶¶ 57–67), negligent failure to warn (*id.* ¶¶ 68–72), negligent plan or design of product (*id.* ¶¶ 73–76), punitive damages (*id.* ¶ 77–83), and loss of consortium (*id.* ¶¶ 84–88). Plaintiffs seek damages for "general, consequential, special, and compensatory damages, including but not limited to pain and suffering, mental anguish, lost wages, lost future income, and loss of consortium." (*Id.*, Prayer for Relief, p. 13).

**THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET.**

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 82 and 1441(a) because the Maricopa Superior Court is located within the District of Arizona.

7.    Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under 28 U.S.C. § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

QB\81917830.1

8.     As explained *infra* at Paragraphs 18–22, this Notice of Removal is timely under 28 U.S.C. § 1446(b)(3) because the "case stated by the initial pleading" was not removable, and Tyco is filing this Notice of Removal less than 30 days after learning, through Mr. Grosch's deposition testimony on June 8, 2023, information from which it could ascertain that the case is in fact removable under 28 U.S.C. § 1442(a)(1).

9.     Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 3.6(b), copies of all documents that were previously filed in state court are attached hereto as **Exhibit B**, along with a verification of undersigned counsel, attached hereto as **Exhibit C**, that true and correct copies of all pleadings and documents in the state court record have been filed.

10.     Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Maricopa Superior Court.[1]

11.     By filing a Notice of Removal in this matter, Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.     Tyco reserves the right to amend or supplement this Notice of Removal.

---

[1] On May 19, 2023, defendant Kidde-Fenwal Inc. ("Kidde-Fenwal") filed the Notice of Suggestion of Bankruptcy For Kidde-Fenwal, Inc. And Automatic Stay of Proceedings, pursuant to which Kidde-Fenwal provided notice that it had filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.  On May 22, 2023, the Superior Court of Arizona, Maricopa County entered a Minute Entry ordering that the case and claims as to Kidde-Fenwal were placed on the Dismissal Calendar until November 22, 2023 and would be dismissed on November 22, 2023 unless prior to the scheduled dismissal dates the Plaintiffs demonstrate that (i) they have sought stay relief which has not been denied,  (ii) they have commenced an adversary proceeding against Kidde-Fenwal which has not yet been resolved; or (iii) they have obtained a severance of the claims against Kidde-Fenwal from the claims against the other parties.

-4-

**MILSPEC AFFF**

13.     The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments.  Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[2] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel.  Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at civilian airports.  The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

14.     All MilSpec AFFF is military equipment, no matter where or by whom it is used.  Tyco and other manufacturers of MilSpec AFFF have designed, manufactured, and supplied the product under contracts with the U.S. government.   The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD").  The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to procurement by the military or civilian airports.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec

---

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

15.    From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—among the very compounds at issue in this case. That requirement was in force for the entire time period that Mr. Grosch worked for the PFD before his cancer diagnosis in 2017.[7]

16.    So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019). Since 2006, the Federal Aviation Administration has required MilSpec AFFF to be used for firefighting activities at Part 139 airports. Phoenix Sky Harbor International Airport (the "Airport") is a Part 139 airport, and since at least 2006 PFD fire trucks responding to actual or potential fire incidents at the Airport have carried and used MilSpec AFFF.

17.    In the course of his work for the PFD before his diagnosis of testicular cancer, Mr. Grosch handled, used, and was exposed to MilSpec AFFF, including MilSpec AFFF

---

[6] *Id.*

[7] In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants. Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations. Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."

1  designed, manufactured, or supplied by Tyco acting under federal direction in accordance
2  with military specifications.

3  **THIS NOTICE OF REMOVAL IS TIMELY.**

4       18.    The basis for removal here is that at least some of the AFFF that Mr. Grosch
5  claims he was exposed to, allegedly causing his testicular cancer, was MilSpec AFFF
6  designed, manufactured, or supplied by Tyco, as to which products Tyco has a federal
7  government contractor defense that it is entitled to litigate in federal court.

8       19.    Neither the original Complaint nor the Amended Complaint set forth any
9  allegations that Mr. Grosch was exposed to MilSpec AFFF.  On the contrary, both pleadings
10  sought to negate any inference that he was exposed to MilSpec AFFF:  "When Matt
11  [Grosch] was stationed at the fire stations servicing the Phoenix-area airports, he worked
12  exclusively on the trucks that were designated for residential and commercial firefighting,
13  which did not hold MilSpec AFFF.  During his professional career, Matt cannot recall ever
14  interacting with MilSpec AFFF."  Complaint ¶ 49; *see also* Am. Complaint ¶ 53 (identical
15  allegation).

16       20.    However, in his deposition, taken June 8, 2023, Mr. Grosch contradicted those
17  allegations in his pleadings.  He testified that before his cancer diagnosis he worked for
18  periods of time at Station 29, a fire house directly adjacent to the Airport that responds to
19  calls from the Airport; that he personally responded to fire calls at the Airport; and that he
20  "probably" loaded foam concentrate into fire trucks at Station 29.  The trucks from Station
21  29 that responded to calls at the airport were required to contain MilSpec AFFF.  On
22  information and belief, some of that MilSpec AFFF was designed, manufactured, or
23  supplied by Tyco acting under federal direction; and some of the foam concentrate that Mr.
24  Grosch handled when loading trucks at Station 29 was MilSpec AFFF designed,
25  manufactured, or supplied by Tyco acting under federal direction.

26

1    21.    In addition, in his deposition Mr. Grosch identified photographs (which he

2    took) of totes and cannisters containing AFFF foam concentrate, and he testified that he

3    believes that, before his cancer diagnosis, he was exposed to all of the brands and types of

4    AFFF shown in the photos.  Some of the products shown in those photos are MilSpec AFFF

5    designed, manufactured, or supplied by Tyco acting under federal direction.

6    22.    Accordingly, Mr. Grosch's deposition testimony for the first time gave Tyco

7    a basis to ascertain that at least some of the AFFF that he was exposed to (and which he

8    contends caused his testicular cancer) was MilSpec AFFF designed, manufactured, or

9    supplied by Tyco acting under federal direction.

10

11    **REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).**

12

13    23.    Removal here is proper under the federal officer removal statute, 28 U.S.C. §

14    1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the

15    direction of a federal officer.  Removal is appropriate under this provision where the

16    removing defendant alleges that: (a) it is a "person" within the meaning of the statute; (b) it

17    acted under federal authority, and the plaintiff's claims are "for or relating to" those actions;

18    and (c) it can assert a "colorable" federal defense.  *Durham*, 445 F.3d at 1251; 28 U.S.C. §

19    1442(a)(1); *see also, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989);

20    *Goncalves ex rel. Goncalves v. Rady Children's Hosp. S.D.*, 865 F.3d 1237, 1244 (9th Cir.

21    2017); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

22    24.    Removal rights under the federal officer removal statute are much broader than

23    under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on

24    behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the

25    federal-question element is met if the defense depends on federal law." *Jefferson County*

26    *v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) "protect[s] federal

-8-

1    officers" and "guarantee[s] its agents access to a federal forum if they are sued or

2    prosecuted." *Durham*, 445 F.3d at 1253.  This important federal policy "should not be

3    frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*,

4    395 U.S. 402, 407 (1969). To the contrary, the statute must be "liberally construed" in favor

5    of removal.  *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517

6    (1932)).

7            25.    All requirements for removal under § 1442(a)(1) are satisfied where, as here,

8    the notice of removal alleges that the plaintiff's injuries have been caused at least in part by

9    MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich.

10   Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper

11   in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018

12   WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same).  The court overseeing the *In re Aqueous*

13   *Film-Forming Foams Products Liability Litigation* multi-district litigation has also found

14   on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal

15   alleges that the plaintiff's injuries have been caused, at least in part, by MilSpec AFFF.  *See*

16   *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL

17   Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No.

18   320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5 (upholding removal where notice of

19   removal alleged that plaintiff's injured stemmed in part from use of MilSpec AFFF at

20   multiple Part 139 civilian airports); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-

21   mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6 (upholding

22   removal where notice of removal alleged that plaintiff's injured stemmed in part from use

23   of MilSpec AFFF at a Part 139 civilian airport).  Given its experience with the claims and

24   defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case,

25   too, has been properly removed to federal court.[8]

26   ―――――――――――――――

[8] Following removal, Tyco intends to designate this action for transfer to the MDL.

26.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP, a limited partnership, meets the definition of a "person" under the statute.  For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

27.     The second requirement is that the defendant has acted under a federal officer, and that the plaintiff's claims are "for or relating to" those actions.  *Durham*, 445 F.3d at 1251; 28 U.S.C. § 1442(a)(1).

28.     A defendant is "acting under" a federal officer when it assists or helps carry out the duties or tasks of a federal officer.  *Goncalves*, 865 F.3d at 1245.  The words "acting under" are to be interpreted broadly.  *Id.*  Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  *Papp*, 842 F.3d at 813. Rather, courts have routinely treated the "acting under" requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured pursuant to federal government specifications.  *Sawyer*, 860 F.3d at 255.

29.     Tyco was "acting under" a federal officer here because the effect of Plaintiffs' claims, at least in part, is to challenge Tyco's alleged conduct in providing MilSpec AFFF, a vital product "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137.  MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9.  The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the

-10-

fluorinated intermediates and agents to achieve improvements in formulations."[9] Accordingly, the government has long depended upon outside contractors like Tyco to develop and supply MilSpec AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9 (holding that Defendants were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *In re AFFF*, 2019 WL 2807266, at *2 (finding "acting under" requirement was satisfied because AFFF manufacturer defendant "has demonstrated that it was manufacturing the product under the U.S. military's guidance").  If Tyco and other manufacturers did not manufacture and supply MilSpec AFFF, the government would have to manufacture and supply the product itself.

30.    In designing, manufacturing, and supplying the PFAS-containing MilSpec AFFF products at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.[10]  Until 2019, those specifications expressly required the use of PFAS ("fluorocarbon surfactants") in MilSpec AFFF.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DOD.[11]

31.    As with the "acting under" requirement, the hurdle erected by the requirement that plaintiff's claims be "for or relating to a defendant's actions under color of federal office" (sometimes termed the "nexus" requirement) "is quite low." *Goncalves*, 865 F.3d

---

[9] *Fulfilling the Roosevelts' Vision* at 37.

[10] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

[11] *See* Dep't of Defense SD-6, *supra* note 7, at 1.

at 1245 (quoting *Isaacson*, 517 F.3d at 137).[12]  It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office.  *See Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d at 813.

32.    Here, Plaintiffs allege that the presence of PFAS in AFFF is the source of their injuries.  Tyco contends that some of the AFFF giving rise to Plaintiffs' claimed injuries was MilSpec AFFF that it designed, manufactured, or supplied; and that the use of PFAS in MilSpec AFFF was required by military specifications.  As a result, Plaintiffs' claims against Tyco are connected to its acts taken under color of federal office.  *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of [PFAS] in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1,  2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where civilian airports used and released AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); MDL Order 3, at 5–6 (same).  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

33.    The third requirement, the existence of a "colorable federal defense," is satisfied by Tyco's assertion of the government contractor defense.  The Ninth Circuit recognizes that this defense supports removal under § 1442(a)(1).  *See Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014).

34.    At the removal stage, a defendant need only show that its government contractor defense is "colorable."  *Id.* (quoting *Jefferson Cty.*, 527 U.S. at 407); *see also,*

---

[12] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

*e.g.*, *Sawyer*, 860 F.3d at 254.  "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139 (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n. 12 (2006)).[13]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (citation omitted).

35.    Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.  Tyco has satisfied these elements for purposes of removal.

36.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir.

---

[13] *See also Kraus v. Alcatel-Lucent*, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.").

1989).  Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping."  It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.  Those specifications are "reasonably precise" in requiring the use of PFAS.  As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family.  Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.  In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product.  *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

37.    With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec.  *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

38.    Regarding the third requirement, in the time period relevant to this case the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, even without any warnings from Tyco, such that the government was able to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The

-14-

MilSpec for AFFF has long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  The United States has understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; and that PFAS have been reported to raise environmental or human health issues.[14]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[15]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.  Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[16]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[17]  If the government is already aware of the relevant product hazards,

---

[14] See, e.g., EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[15] See Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[16] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[17] See MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; see also David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

1  no warning by the manufacturer to the government is required.  *See Ayo*, 2018 WL 4781145,

2  at *14

3       39.    At minimum, these facts constitute colorable evidence that Naval Sea Systems

4  Command "made a discretionary determination" regarding the formulation of MilSpec

5  AFFF after weighing the fire-suppression benefits against the alleged risks.  *See Twinam v.*

6  *Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008);

7  *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the

8  government where 'the government knew as much or more than the defendant contractor

9  about the hazards of the product.'" (citation omitted)).  Where, as here, the government has

10  exercised "discretionary authority over areas of significant federal interest such as military

11  procurement," the government contractor defense applies.  *In re "Agent Orange" Prod.*

12  *Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

13       40.    Tyco's use of PFAS in MilSpec AFFF was required by military specifications.

14  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiffs that were caused

15  in whole or in part by Tyco's compliance with military specifications, Plaintiffs are

16  attempting to use state tort law to attack design choices dictated by the military.  The

17  government contractor defense precludes such an attack.  *See Boyle*, 487 U.S. at 509.

18       41.    In the MDL, the court has found based on an extensive factual record that the

19  government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers

20  presents genuine issues of fact for trial.  *See In re Aqueous Film-Forming Foams Prods.*

21  *Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022).  A defense that presents

22  triable issues is by definition better than merely "colorable."

23

24

25

26

QB\81917830.1

1    WHEREFORE, Tyco hereby removes this action from the Maricopa Superior Court

2    to this Court.

3    RESPECTFULLY SUBMITTED this 7th day of July, 2023.

4                                    QUARLES & BRADY LLP
                                     Renaissance One
5                                    Two North Central Avenue
                                     Phoenix, AZ 85004-2391
6

7                                    By */s/ Catherine Allen*
                                        Eric B. Johnson
8                                        Catherine Guastello Allen

9                                        *Attorneys for Tyco Fire Products LP*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-17-

1

## **CERTIFICATE OF SERVICE**

2

3   I hereby certify that on July 7, 2023, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court through the U.S. District Court Electronic Court Filing System, which caused notice of such filing to be sent electronically to the registered attorneys of record, and mailed copies via U.S. Mail and email as indicated below:

4

5

                                                                            */s/ Sybil Taylor Aytch*

6

7   <u>Via first class U.S. Mail and Electronic Mail:</u>

    Lincoln Combs
8   O'STEEN & HARRISON, PLC
    300 W. Clarendon Ave., Suite 400
9   Phoenix, Arizona 85013-3424
10  lcombs@vanosteen.com

11  -and-

12
    Kerry Miller
13  Jason W. Burge
    Danielle Teutonico
14  FISHMAN HAYGOOD LLP
    201 St. Charles Ave., Floor 46
15  New Orleans, Louisiana 70170
    504.586.5252
16  kmiller@fishmanhaygood.com
17  jburge@fishmanhaygood.com
    dteutonico@fishmanhaygood.com
18  *Attorneys for Plaintiffs*
19

20  Miles Masog
    Ellen Levy
21  RESNICK & LOUIS, P.C.
    8111 E. Indian Bend Road
22  Scottsdale, AZ 85250
23  mmasog@rlattorneys.com
    elevy@rlattorneys.com
24  *Attorneys for Matlick Enterprises Inc.*

25

26

QB\81917830.1

1

2

Jeffrey D. Gardner
Jimmie W. Pursell, Jr.
Daniel J. F. Peabody
JENNINGS, STROUSS & SALMON, P.L.C.
1 East Washington St., Suite 1900
Phoenix, Arizona 85004-2554
*Attorneys for Kidde-Fenwal, Inc.*

3

4

5

6

7

8

9

<u>Via first class U.S. Mail</u>
National Foam, Inc.
c/o Corporation Trust Company
Registered Agent
1209 Orange St.,
Wilmington, DE  19801

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QB\81917830.1