# Exhibit "A"

Clerk of the Superior Court
*** Electronically Filed ***
M. Saldana, Deputy
3/14/2023 3:16:12 PM
Filing ID 15676334

**O'STEEN & HARRISON**
ATTORNEYS AT LAW

Lincoln Combs, No. 025080
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
T: (602) 252-8888 F: (602) 274-1209
lcombs@vanosteen.com

Kerry Miller, *pro hac vice pending*
Jason W. Burge, *pro hac vice pending*
Danielle Teutonico, *pro hac vice pending*
**FISHMAN HAYGOOD LLP**
201 St. Charles Ave., Floor 46
New Orleans, Louisiana 70170
T: (504) 586-5252 F: (504) 586-5250
kmiller@fishmanhaygood.com
jburge@fishmanhaygood.com
dteutonico@fishmanhaygood.com

*Attorneys for Plaintiff*

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MATTHEW GROSCH and SHELAGH GROSCH,<br><br>Plaintiffs,<br><br>v.<br><br>TYCO FIRE PRODUCTS, LP, MATLICK ENTERPRISES, INC., KIDDE FENWAL INC., and NATIONAL FOAM INC.<br><br>Defendants. | Case No. CV2022-000124<br><br>**AMENDED COMPLAINT**<br><br>**AND**<br><br>**JURY TRIAL DEMAND**<br><br>(Assigned to the Hon. Paula A. Williams) |

For their Amended Complaint against Defendants Tyco Fire Products, LP ("Tyco"), Kidde Fenwal Inc., ("Kidde Fenwal"), National Foam, Inc. ("National Foam"), and Matlick Enterprises, Inc. ("United Fire" and, collectively with Tyco, Kidde Fenwal, and National Foam, "Defendants"), Plaintiffs Matthew Grosch and Shelagh Grosch ("Plaintiffs"), through undersigned counsel, hereby allege, based upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff Matthew Grosch ("Matt") has been a firefighter for fifteen years. Throughout that period, he worked with aqueous film-forming foams ("AFFFs") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS include, but are not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2. AFFFs are used by fire departments, including the departments where Matt worked, to extinguish fires. Matt was exposed to AFFFs in training sessions, while fighting fires, and, after a fire was extinguished, by "painting" rooms, which entails coating every surface with a thick concentration of foam to prevent fires from rekindling. Throughout his career, Matt had routine dermal exposure to AFFFs.

3. Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFFs with knowledge that they contained highly toxic PFAS, which would expose end users of the product to the risks associated with PFAS. Each of the Defendants supplied AFFFs, either on a manufacturer or distributor basis, to the Phoenix Fire Department that employs Matt.

4. PFAS accumulates in the blood and bodily tissues of humans exposed to the material and persists for long periods of time. These are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS present significant health risks to humans who are exposed to them.

5. In his role as a firefighter, Matt used Defendants' AFFFs in their intended manner, without material change in the products' condition, and in a manner which Defendants were aware that firefighters like Matt would use the product. Matt was unaware of the toxic nature of the PFAS in AFFFs – indeed, Defendants represented their foam products were inert and posed no health hazards.

6. After more than a decade of exposure to AFFFs, in March 2017 Matt was diagnosed with testicular cancer. Matt's consumption, and/or dermal absorption of Defendants' AFFF products caused him to develop the serious medical conditions and complications alleged herein.

7. Through this action, Matt and his wife, Shelagh, seek to recover for the permanent and significant damages sustained as a direct consequence of his exposure to Defendants' AFFF products during the course of Matt's training and firefighting activities.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiffs are a married couple residing in Maricopa County, Arizona.

9. Defendant Tyco Fire Products, LP, as a successor-in-interest to the Ansul Company ("Tyco") is a Delaware limited partnership and does business throughout the United States, including in Maricopa County, Arizona. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS. Tyco, and its predecessor in interest Ansul, designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

10. Defendant Kidde Fenwal, Inc. ("Kidde Fenwal") is a Massachusetts corporation and does business throughout the United States, including Maricopa County, Arizona. Upon information and belief, Kidde Fenwal and/or its legal predecessors from whom it assumed liability, including National Foam Ltd. ("National Foam"), designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

11. Defendant National Foam, Inc. ("National Foam") is a Pennsylvania corporation and does business throughout the United States, including in Maricopa County, Arizona. National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training

O'STEEN & HARRISON
ATTORNEYS AT LAW

and response exercises that are the subject of this Amended Complaint.

12. Defendant Matlick Enterprises, Inc. d/b/a United Fire Equipment Company ("United Fire") is an Arizona corporation and does business throughout this state, including in Maricopa County. United Fire marketed, distributed, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises that are the subject of this Amended Complaint.

13. Tyco, Kidde Fenwal, and National Foam are hereafter referred to as the "Manufacturer Defendants." United Fire is hereafter referred to as the "Distributor Defendant."

14. Defendants have caused events to occur in Maricopa County, Arizona, out of which all claims stated herein arise, and venue is proper in this Court pursuant to A.R.S. S 12-401.

15. The amount in controversy exceeds the Court's minimum jurisdictional amount.

16. The Court has jurisdiction of this action pursuant to Article VI, Section 14 of the Arizona Constitution and A.R.S. § 12-123.

## GENERAL ALLEGATIONS

17. Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish fires.

18. AFFF has better firefighting capabilities than water because of its unique properties, which extinguish fires by smothering them, ultimately starving them of oxygen.

19. AFFFs can be used to fight fires directly in conjunction with or in place of water, or they can be used to insulate a premises that was previously on fire, to prevent fire from reigniting.

20. AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and other parts of the world. AFFF contains PFAS, which are highly fluorinated synthetical chemical compounds whose family includes PFOS and PFOA.

21. PFAS have been used for decades in the manufacture of AFFF. PFAS chemicals

are entirely manmade, and do not naturally occur.

22. Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in humans.

23. AFFF and PFAS are associated with various adverse health effects in humans.

24. Exposure to AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

25. In the 1960s, studies by PFAS manufacturers raised concerns about the health risks caused by these substances.[1]

26. By the 1970s, animal studies of PFAS revealed immunotoxicity and other adverse effects.

27. By the 1980s, studies by PFAS manufacturers reported immunotoxicity and carcinogenicity effects caused by PFAS.

28. By the 1990s, certain PFAS manufacturers began monitoring the levels of PFAS in the blood serum of their workers. Studies began showing an excess occurrence of prostate cancer in individuals exposed to PFAS.

29. By at least 2010, additional research and testing performed by certain PFAS manufacturers revealed multiple potential adverse health impacts among workers exposed to PFAS, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

30. After the USEPA and other entities began asking manufacturers to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or distributing more of certain other and/or "new" PFAS, including so-called "Short-Chain PFAS."

31. Defendants manufacturing and/or distributing Short-Chain PFAS are aware that Short-Chain PFAS have also been found in human blood. By the mid-2010s, manufacturers were

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6172956/

aware that certain Short-Chain PFAS have been found to cause the same triad of tumors, (testicular, liver, and pancreatic), in animals as non-Short-Chain PFAS.

32. Moreover, by the early 2010s, research on Short-Chain PFAS suggested that the technical performance of these Short-Chain PFAS is lower, requiring larger quantities and/or more substances to be used to provide the same performance, leading to the same aggregate exposure for affected humans.

33. Nonetheless, Defendants each downplayed the risks of AFFFs containing PFAS to firefighters like Matthew Grosch.

34. Even after an independent science panel, known as the "C8 Science Panel," announced in the 2010s that human exposure to PFAS were associated with certain human diseases, including kidney and testicular cancer,[2] Defendants continued to downplay the risk of AFFFs.

35. At all relevant times, Manufacturer Defendants, through their acts and omissions, concealed and/or withheld information from its customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the risks of exposure to AFFFs containing PFAS.

36. At all relevant times, Defendants encouraged continued and increased use of PFAS by their customers and others and tried to encourage and foster the increased and further use of PFAS through the promotion of AFFFs to fire departments, including the fire department where Matthew Grosch works, while downplaying the risks.

37. At all relevant times, Manufacturer Defendants were and/or should have been aware, or knew and/or should have known, that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials and/or sale of AFFFs containing PFAS would result in the contamination of the blood and/or body of Matthew Grosch with PFAS, causing injury, irreparable harm, and/or unacceptable

---

[2] https://ehp.niehs.nih.gov/doi/pdf/10.1289/ehp.1306615

risk of such injury and/or irreparable harm to Matthew Grosch.

**Defendants' AFFFs were used by the Phoenix Fire Department**

38. Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing toxic PFAS that were used by fire departments around the country, including county and municipal firefighting departments.

39. Defendants each designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS in such a way as to cause the exposure to and ultimate contamination of Matthew Grosch's blood and body with PFAS, resulting in persistence and accumulation of PFAS in his blood and body.

40. Each of the Defendants manufactured, sold, and/or distributed AFFFs to the Phoenix Fire Department, thereby causing the contamination of the blood and/or body of Matthew Grosch with PFAS.

41. Tyco/Ansul manufactured and/or sold AFFFs to Phoenix Fire Department, based upon information and belief, during all relevant time periods. Tyco/Ansul's AFFFs were used by firefighters in the Phoenix Fire Department, including Matthew Grosch, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Tyco/Ansul thereby exposing Matthew Grosch to PFAS.

42. Kidde Fenwal manufactured and/or sold AFFFs to Phoenix Fire Department, based upon information and belief, during all relevant time periods. Kidde Fenwal's AFFFs were used by firefighters in the Phoenix Fire Department, including Matthew Grosch, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by Kidde Fenwal thereby exposing Matthew Grosch to PFAS.

43. National Foam manufactured and/or sold AFFFs to Phoenix Fire Department, based upon information and belief, during all relevant time periods. National Foam's AFFFs were used by firefighters in the Phoenix Fire Department, including Matthew Grosch, in their ordinary

O'STEEN & HARRISON
ATTORNEYS AT LAW

course of firefighting activities and in the manner in which these AFFFs were expected to be used by National Foam thereby exposing Matthew Grosch to PFAS.

44. United Fire distributed AFFFs to the Phoenix Fire Department, based upon information and belief, during all relevant time periods. AFFFs distributed by United Fire were used by firefighters in the Phoenix Fire Department, including Matthew Grosch, in their ordinary course of firefighting activities and in the manner in which these AFFFs were expected to be used by United Fire, thereby exposing Matthew Grosch to PFAS.

**The Plaintiff's exposure to Defendants' AFFFs**

45. Matthew Grosch and his wife, Shelagh Grosch, have been happily married since October 2001.

46. Matthew Grosch began his fire service career in January of 2007, with the Phoenix Fire Department, serving the city of Phoenix, Arizona.

47. Matt was first exposed to AFFFs in the Phoenix Fire Department academy, where he trained with Class A and B firefighting foams. During training, it was common to have AFFFs on his body from head to toe, and it was common to have direct skin contact with AFFFs while cleaning up after drills. At the time, he was led to believe that the foam was generally inert and provided no hazard to his health. After his training, in service as a firefighter, Matt was exposed to AFFFs while spraying foam during firefighting operations.

48. Matt's responsibilities included driving, pumping, and maintaining the fire truck, which included pumping AFFFs, cleaning AFFFs out of the firefighting equipment, and adding new foam as needed. While operating and cleaning equipment using foam, he was never given any instruction from the manufacturers of distributors to avoid contact with AFFFs, or that the materials were otherwise harmful.

49. During Matt's time as a firefighter, distributors like Defendants met with the Phoenix Fire Department and promoted the various uses of AFFFs as modern and advanced solutions to fire fighting.

O'STEEN & HARRISON
ATTORNEYS AT LAW

50. The fire stations servicing the Phoenix-area airports had specific "crash trucks" that are designated solely for fighting aircraft fires. The crash truck for the Phoenix-area airports contained MilSpec AFFF.

51. The fire stations servicing the Phoenix-area airports also house engines used to fight residential and commercial fires. Although these non-airport engines used AFFFs, they were not used to fight aircraft fires and therefore did not have MilSpec AFFF.

52. Firefighters who regularly expect to fight aircraft fires obtain an Aircraft Rescue Firefighting ("ARF") certification. Matt was not ARF certified at any time prior to his diagnosis and never fought aircraft fires.

53. When Matt was stationed at the fire stations servicing the Phoenix-area airports, he worked exclusively on the trucks that were designated for residential and commercial firefighting, which did not hold MilSpec AFFF. During his professional career, Matt cannot recall ever interacting with MilSpec AFFF.

54. Over the course of 16 years as a firefighter with the Phoenix Department, from 2007 to the present, Matthew Grosch routinely used, handled, and came in direct contact with AFFFs containing PFOA produced, manufactured, sold, and/or distributed by the Defendants. His exposure to these products was in the ordinary course of his firefighting activities, and was in the standard way that Defendants anticipated that these products would be used and handled.

55. At no time in his career was Matt warned by the Defendants that their products carried a substantial risk of adverse medical outcomes, including cancers such as testicular cancer.

56. In March 2017, at the age of 40, Matthew Grosch was diagnosed with testicular cancer, with a significant tumor. He had no family history of testicular cancer, nor any genetic predisposition. He is not and has never been a smoker. Among other medical treatments, he underwent an orchiectomy and chemotherapy. His medical treatments continue to this day.

//

//

**FIRST CLAIM FOR RELIEF**

**(Strict Products Liability-Design Defect and Failure to Warn against All Defendants)**

57. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 56 of this Amended Complaint as if they were fully set forth herein.

58. Upon information and belief, Defendants are the manufacturers and/or distributors of the AFFFs containing PFAS to which Matthew Grosch was exposed.

59. Defendants are each the sellers of the AFFFs containing PFAS to which Matthew Grosch was exposed. Defendants sell AFFFs in the ordinary course of their business.

60. The use of the AFFFs in training activities and routine firefighting activities was the purpose for which the AFFFs were intended and was reasonably foreseeable by Defendants. The AFFFs were used in substantially the same condition in which they were sold.

61. A reasonable firefighter would not expect the AFFFs used in training activities and routine firefighting activities to expose him to a known carcinogen.

62. AFFFs failed to perform as safely as an ordinary firefighter would expect when the AFFFs were used in the reasonably foreseeable manner of routine firefighting activities.

63. Defendants designed an unreasonably harmful product that was inherently defective in that it contained known carcinogens.

64. Defendants had full knowledge that AFFFs contained known carcinogens and failed to warn Plaintiffs of the unreasonably dangerous risks.

65. Matthew Grosch has suffered lasting and ongoing personal injuries resulting from the defective and unreasonably dangerous nature of the product caused by its defective design.

66. Matthew Grosch was a healthy middle-aged man with no history of testicular cancer, making his likelihood of developing the disease quite low.

67. As a direct and proximate result of the foregoing, Plaintiffs have been damaged, both via personal injuries and through loss of consortium, in an amount to be proven at trial.

//

## SECOND CLAIM FOR RELIEF

**(Negligent Failure to Warn Against Manufacturing Defendants)**

68. Plaintiffs incorporate the allegations contained in paragraphs 1 through 68 of this Amended Complaint as if they were fully set forth herein.

69. Manufacturing Defendants knew, through internal and external research, that AFFFs were likely dangerous when used in training activities and routine firefighting activities.

70. Manufacturing Defendants had no reason to believe that Plaintiffs would realize the danger of AFFFs, including their carcinogenic effects.

71. Manufacturing Defendants failed to exercise reasonable care to inform Plaintiffs of AFFFs dangers or of the facts which make it likely to be dangerous.

72. Because of Defendants' failure to warn Plaintiffs about the dangers of AFFFs, Plaintiffs suffered personal injuries.

## THIRD CLAIM FOR RELIEF

**(Negligent Plan or Design of Product Against All Defendants)**

73. Plaintiffs incorporate the allegations contained in paragraphs 1 through 72 of this Amended Complaint as if they were fully set forth herein.

74. AFFFs, products designed by Defendants, are dangerous for use in training activities and routine firefighting activities, which is the intended use of AFFFs.

75. Defendants failed to exercise reasonable care in continuing to design and failing to re-design AFFFs which contain dangerous carcinogens.

76. Because of Defendants' defective design of AFFFs Plaintiffs suffered personal injuries.

## FOURTH CLAIM FOR RELIEF

**(Punitive Damages against Manufacturer Defendants)**

77. Plaintiffs incorporate the allegations contained in paragraphs 1 through 76 of this Amended Complaint as if they were fully set forth herein.

O'STEEN & HARRISON
ATTORNEYS AT LAW

78. Upon information and belief, Manufacturer Defendants first started manufacturing, marketing, and selling AFFFs many years ago.

79. Over the ensuing years, the Manufacturer Defendants either knew or should have known that an increasing volume of industry research demonstrated that AFFFs cause serious medical effects in humans who are exposed to them dermally, including tissue cancers such as testicular cancer. Throughout that period, and up to the present, the Manufacturer Defendants have never warned firefighters or the broader public of the known health risks of AFFFs.

80. The Manufacturer Defendants had obligations under various laws, including but not limited to 15 U.S.C. § 2607(3), to disclose to various government agencies the health risks of AFFFs containing PFAS, including in particular the carcinogenic effects of these products of which the Manufacturer Defendants were aware. Nonetheless, the Manufacturer Defendants intentionally withheld from applicable government agencies their knowledge of the hazardous health effects AFFFs can cause to fire fighters like Matthew Grosch.

81. The Manufacturer Defendants consciously pursued this course of conduct – the manufacture, marketing, and sale of a deficient and dangerous product with no representation to expected users of this known danger – in order to serve its own profit motives.

82. The Manufacturer Defendants pursued the actions set forth above despite its knowledge of the substantial risk that AFFFs posed to firefighters like Matthew Grosch.

83. The Manufacturer Defendants acted with an evil mind, meriting an award of punitive damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**(Loss of Consortium)**

84. Plaintiffs incorporate the allegations contained in paragraphs 1 through 83 of this Amended Complaint as if they were fully set forth herein.

85. Shelagh Grosch is and was at all times relevant to this action, the legal spouse of Matthew Grosch, and they have at all times relevant to this action, lived together as husband and

wife.

86.     As a proximate result of the personal injuries suffered by Matthew Grosch, as described in this Amended Complaint, Shelagh Grosch has been deprived of the benefits of their marriage including his love, affection, society, and consortium, and other husbandly duties and actions.  Matthew Grosch provided Shelagh Grosch with all of the benefits of a marriage between husband and wife, prior to his exposure to Defendants' hazardous AFFFs and the resulting injuries described herein.

87.     Shelagh Grosch has also incurred the costs and expenses related to the medical care, treatment, medications, and hospitalization to which Matthew Grosch was subjected for the physical injuries he suffered as a proximate result of his use of the Defendants' AFFFs. Shelagh Grosch will continue to incur the future costs and expenses related to the care, treatment, medications, and hospitalization of Matthew Grosch due to his injuries from exposure to Defendants' hazardous AFFFs.

88.     Shelagh Grosch has suffered loss of consortium, as described herein, including the past, present, and future loss of her husband's companionship, services, society, and the ability of Matthew Grosch to provide Shelagh Grosch with the benefits of marriage, all of which has resulted in her pain, suffering, and mental and emotional distress and worry.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

**WHEREFORE**, Plaintiffs Matthew and Shelagh Grosch hereby request that the Court enter judgment against all Defendants as follows:

A.     For general, consequential, special, and compensatory damages, including but not limited to pain and suffering, mental anguish, lost wages, lost future income, and loss of consortium;

B.     For Plaintiffs' costs and other expenses incurred in this action; and

C.     Such other and further relief as the Court deems just.

**WHEREFORE**, Plaintiffs Matthew and Shelagh Grosch hereby request that the Court additionally enter judgment against the Manufacturer Defendants as follows:

A.  For punitive damages.

DATED this 14th day of March, 2023.

                                              **O'STEEN & HARRISON, PLC**

                                              _____
                                              Lincoln Combs

                                              **FISHMAN HAYGOOD LLP**
                                              Kerry J. Miller
                                              Jason W. Burge
                                              Danielle Teutonico
                                              *Attorneys for Plaintiff*

**ORIGINAL** of the foregoing e-filed with
Maricopa County Superior Court Clerk
via TurboCourt this 14th day of March, 2023.

**COPY** of the foregoing e-served this same date to:

Kerry Miller, *pro hac vice pending*
Jason W. Burge, *pro hac vice pending*
Danielle Teutonico, *pro hac vice pending*
**FISHMAN HAYGOOD LLP**
201 St. Charles Ave., Floor 46
New Orleans, Louisiana 70170
kmiller@fishmanhaygood.com
jburge@fishmanhaygood.com
dteutonico@fishmanhaygood.com
*Attorneys for Plaintiff*

O'STEEN & HARRISON
ATTORNEYS AT LAW

1  Ellen S. Levy
   **RESNICK & LOUIS, P.C.**
2  8111 E. Indian Bend Road
   Scottsdale, Arizona 85250
3  elevy@rlattorneys.com
   *Attorneys for Defendant Matlick Enterprises, Inc.*
4

5  Eric B. Johnson
   Catherine Allen
6  **QUARLES & BRADY LLP**
   Renaissance One, Two North Central Avenue
7  Phoenix, AZ 85004-2391
8  eric.johnson@quarles.com
   Catherine.Allen@quarles.com
9  *Attorneys for Defendant Tyco Fire Products LP*

10

11  By /s/ *Donna Avilez*