**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Grosch, et al., | No. CV-23-01259-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Tyco Fire Products LP, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion to remand.  (Doc. 6.)  Also pending is Defendant Tyco Fire Products LP's conditional motion for an "automatic 30-day stay of execution" under Rule 62(a) of the Federal Rules of Civil Procedure.  (Doc. 11.)  For the following reasons, both motions are granted.

## BACKGROUND

On January 4, 2022, Plaintiffs filed this action in Maricopa County Superior Court. (Doc. 2-2.)

On March 14, 2023, Plaintiffs filed the first amended complaint ("FAC").  (Doc. 2.) The FAC names four Defendants: Tyco Fire Products LP ("Tyco"), Matlick Enterprises, Inc. ("Matlick"), Kidde Fenwal Inc. ("Kidde"), and National Foam, Inc. ("National Foam").  (*Id.*)

The allegations in the FAC are as follows.  Plaintiff Matthew Grosch ("Grosch") has been a firefighter for 15 years.  (*Id.* ¶ 1.)  He works for the Phoenix Fire Department. (*Id.* ¶ 3.)  Grosch's work involves routine exposure (in training sessions, while fighting

1    fires, and while applying post-fire preventative treatments) to aqueous film-forming foams

2    ("AFFFs") containing toxic chemicals known as per- and polyfluoroalkyl substances

3    ("PFAS"), exposure to which has been linked to serious medical conditions including

4    testicular cancer. (*Id.* ¶¶ 1-2, 24.)  However, Grosch was never exposed to a particular

5    form of AFFF known as "MilSpec AFFF." (*Id.* ¶¶ 50-53.)

6            Defendants supplied AFFFs to the Phoenix Fire Department. (*Id.* ¶ 3.) In his role

7    as a firefighter, Grosch "used Defendants' AFFFs in their intended manner" and "was

8    unaware of the toxic nature of the PFAS in AFFFs," as "Defendants represented their foam

9    products were inert and posed no health hazards." (*Id.* ¶ 5.) Grosch's prolonged exposure

10   to the AFFFs caused him to develop testicular cancer, which was diagnosed in March 2017

11   and has necessitated various medical treatments including an orchiectomy and

12   chemotherapy. (*Id.* ¶ 6, 56.) Defendants allegedly knew that the AFFFs contained PFAS

13   when they supplied them to the Phoenix Fire Department and "knew, or should have

14   known, that PFAS present significant health risks to humans who are exposed to them."

15   (*Id.* ¶¶ 3-4.) Grosch and his wife, Shelagh Grosch, assert state-law claims for strict liability

16   (design defect and failure to warn) and negligence (design and failure to warn), seeking

17   compensatory damages for personal injuries and loss of consortium as well as punitive

18   damages. (*Id.* at 11-15.)

19           On July 7, 2023, Tyco removed this action pursuant to the federal officer removal

20   statute, 28 U.S.C. § 1442(a)(1). (Doc. 1.)

21           On July 17, 2023, Plaintiffs filed a motion to remand. (Doc. 6)

22           On July 21, 2023, Plaintiffs filed a motion to expedite consideration of their remand

23   motion (Doc. 7), which the Court granted (Doc. 8).[1]

24   _____

[1]        The motion to expedite asserted that the remand motion "should be heard prior to
25   any decision to include this case in the Multidistrict Litigation happening across the
     country, in South Carolina" and noted that the case "is one of several firefighter actions
26   currently proceeding in Arizona state court, and indeed a motion was recently made to
     consolidate Mr. Grosch's case with other state cases for trial." (Doc. 7 at 2.) On August
27   15, 2023, Tyco filed a supplemental submission notifying the Court that the state court
     denied Plaintiffs' consolidation motion. (Doc. 12.) Tyco attached a copy of the two-
28   sentence state-court order, which denied the motion to consolidate "for the reasons set forth
     in the Oppositions to same" (Doc. 12-1) but did not include the cross-referenced
     opposition. Thus, it is unclear whether the denial was based on removal to federal court

1   On July 28, 2023, Tyco filed a response to the remand motion.  (Doc. 9.)

2   On August 2, 2023, Plaintiffs filed a reply in support of their remand motion.  (Doc.

3 10.)

4   On August 3, 2023, Tyco filed a conditional motion for an "automatic 30-day stay

5 of execution" under Rule 62(a) of the Federal Rules of Civil Procedure.  (Doc. 11.)

6 Plaintiffs did not file an opposition.

7         **DISCUSSION**

8 I.  <u>Remand</u>

9   A.  **Legal Standard**

10   "The federal officer removal statute permits a defendant to remove to federal court

11 a state-court action brought against the 'United States or any agency thereof or any officer

12 (or any person acting under that officer) of the United States or of any agency thereof, sued

13 in an official or individual capacity for any act under color of such office . . . .'"  *Watson*

14 *v. Philip Morris Companies, Inc.*, 551 U.S. 142, 145 (2007) (emphasis omitted) (quoting

15 28 U.S.C. § 1442(a)(1)).  "In order to invoke § 1442(a)(1), a private person must establish:

16 '(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its

17 actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c)

18 it can assert a colorable federal defense.'"  *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th

19 733, 755 (9th Cir. 2022) (citation omitted).  "To demonstrate a causal nexus, the private

20 person must show: (1) that the person was 'acting under' a federal officer in performing

21 some 'act under color of federal office,' and (2) that such action is causally connected with

22 the plaintiff's claims against it."  *Id.*  Although removal statutes are normally "strictly

23 construed," with "any doubts" resolved "in favor of remanding," the federal officer

24 removal statute must be interpreted "broadly in favor of removal."  *Durham v. Lockheed*

25 *Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

26   A defendant seeking to remove an action under this statute "may not offer mere

27 legal conclusions; it must allege the underlying facts supporting each of the requirements

28 and whether consolidation might again be sought following remand.

- 3 -

for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).  "[A] plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations."  *Id.*  Where a remand motion raises a factual attack "by contesting the truth of" the allegations in the notice of removal, the removing defendant "must support its allegations with competent proof" and "bears the burden of proving by a preponderance of the evidence" that "each of the requirements for subject-matter jurisdiction has been met."  *Id.* at 1121-22.

### B.     The Parties' Arguments

The crux of Tyco's argument is that Tyco was "acting under" a federal agency—the U.S. military—when it designed some of the AFFF that allegedly caused Grosch's injuries. Tyco asserts in the removal notice that "[r]ecent discovery in this case has revealed that at least some of the AFFF that gives rise to Plaintiffs' claims was designed, manufactured, and supplied by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications."  (Doc. 1 ¶ 2.)  More specifically, Tyco contends that Grosch was exposed to a particular form of AFFF known as "MilSpec AFFF," which "Tyco and other manufacturers . . . have designed, manufactured, and supplied . . . under contracts with the U.S. government."  (*Id.* ¶ 14.)  Tyco alleges that "[t]he design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ('DoD')," that "[t]he applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then," and that "[f]rom its inception until 2019" (thus, "for the entire time period that Mr. Grosch worked for the [Phoenix Fire Department] before his cancer diagnosis in 2017"), the specification "included the express requirement that MilSpec AFFF contain 'fluorocarbon surfactants,'" which include "the very compounds at issue in this case."  (*Id.* ¶¶ 14-15.)  According to Tyco, "[a]ll MilSpec AFFF is military equipment, no matter where or by whom it is used."  (*Id.* ¶ 14.)[2]

---

[2]     Tyco also asserts in the removal notice that, "[s]ince 2006, the Federal Aviation Administration has required MilSpec AFFF to be used for firefighting activities at Part 139 Airports," which "are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft,"

1      In the motion to remand, Plaintiffs advance what the Court perceives to be six

2  reasons why Tyco's removal effort should be deemed deficient.  (Doc. 6-1.)  First,

3  Plaintiffs dispute whether, as a factual matter, Grosch was exposed to MilSpec AFFF.  (*Id.*

4  at 4-6.)  Plaintiffs contend that "Tyco offers no concrete evidence to support that

5  allegation" and argue that Grosch's deposition testimony on this topic was "confused" and

6  "no[t] definitive." (*Id.*)  Second, in a related vein, Plaintiffs argue that the theory of liability

7  asserted in the FAC is that Grosch's cancer was caused by exposure to "non-MilSpec"

8  AFFF.  (*Id.* at 5-6. *See also id.* at 13 ["Mr. Grosch specifically alleged that he did not use

9  MilSpec AFFF in his firefighting duties."]; *id.* at 16-17 ["Tyco's . . . allegations are

10  contrary to the well-pleaded facts of the Amended Complaint."].)  Plaintiffs thus liken this

11  case to *Young v. Chemguard, Inc.*, 2021 WL 2070445 (D. Ariz. 2021), where a removal

12  attempt was rejected because the basis for federal jurisdiction was a federal defense to a

13  claim that had not been alleged in the complaint.  (*Id.* at 5.)  Third, Plaintiffs argue that

14  even assuming the issue of MilSpec AFFF exposure is factually supported and relevant,

15  Tyco cannot satisfy the "acting under" requirement of § 1442 because it "is simply

16  producing a product in compliance with federal regulation" and the Ninth Circuit has "held

17  definitively . . . [that] making a product pursuant to Federal standards does not qualify [a

18  manufacturer] as a 'person acting under a federal agency.'"  (*Id.* at 11.)  Fourth, Plaintiffs

19  argue that Tyco also cannot satisfy the "causal nexus" requirement of § 1442 because

20  "Plaintiffs have brought an action based solely on state law negligence and products

21  liability and have not averred that Tyco's obligation to comply with federal regulations was

22  breached."  (*Id.* at 11-12.)  Fifth, Plaintiffs argue that Tyco cannot satisfy the "colorable

23  federal defense" requirement of § 1442 because Grosch was never exposed to MilSpec

24

25  including Phoenix Sky Harbor International Airport. (*Id.* ¶ 16.) According to Tyco, "since
at least 2006[,] [Phoenix Fire Department] fire trucks responding to actual or potential fire
26  incidents at the Airport have carried and used MilSpec AFFF." (*Id.*) However, in its
response to Plaintiffs' motion to remand, Tyco concedes that "[t]he fact that the FAA
27  requires Part 139 airports to use MilSpec AFFF does not mean Tyco acts under FAA
regulations in supplying the product" (Doc. 9 at 14 n.10) and focuses all of its arguments
28  on its theory that it was "acting under" the military. Accordingly, Tyco has waived any
alternative theory of removal premised on the FAA.

1    AFFF. (*Id.* at 12-13.) Sixth, Plaintiffs argue that "Tyco's connection with the federal
2    government" is "attenuated" because "[i]n manufacturing MilSpec AFFF and selling it to
3    municipal firefighting agencies, Tyco was in no way aiding the federal government in
4    carrying out its duties, it was manufacturing AFFF for private sale by use of non-federal
5    entities." (*Id.* at 14.)

6    Tyco opposes Plaintiffs' remand request. (Doc. 9.) In response to Plaintiffs' first
7    argument, Tyco argues that even though "as [a] tactical ploy to try to avoid removal of this
8    action, [Grosch's] Amended Complaint went out of its way to distance his claim from
9    MilSpec AFFF," Grosch's deposition "testimony made clear that he *did* 'interact[] with'
10   and have exposure to MilSpec AFFF before his cancer diagnosis." (*Id.* at 6.) In response
11   to Plaintiffs' second argument, Tyco argues that "the 'well-pleaded complaint' rule does
12   not apply" when it comes to federal officer removal and that "[i]f the federal defense
13   asserted in the notice of removal applies to *any* portion of the plaintiff's claims, the entire
14   action is removable," such that "[i]t is irrelevant that the plaintiff's alleged injury appears
15   to arise predominantly from conduct not covered by the federal defense" because "[a]
16   federal defense not need be able to win the entire case in order to support removal." (*Id.*
17   at 8-9.) Tyco also contends that *Young* is distinguishable because the firefighter plaintiff
18   there "claimed injury from occupational exposure to PFAS from AFFF, but removal was
19   premised on the allegation that the injury was caused in part by an entirely different PFAS
20   source—MilSpec AFFF that had been used at a nearby military base[] and contaminated
21   the community drinking water." (*Id.* at 9 n.7. *See also id.* at 12 n.9 [identifying additional
22   grounds for distinguishing *Young*].) As for Plaintiffs' third argument, Tyco contends that
23   "[c]ourts have 'unhesitatingly' treated the 'acting under' requirement as satisfied where a
24   contractor seeks to remove a case involving injuries arising from equipment that it
25   manufactured in accordance with military specifications." (*Id.* at 13-14, citing *Sawyer v.*
26   *Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017).) Tyco also disagrees with
27   Plaintiffs' contention that it is seeking to satisfy the "acting under" requirement via proof
28   of regulatory compliance, arguing that "removal here does not rest in any part on Tyco's

1    compliance with federal 'regulations' . . . .   A military product specification is not a

2    'regulation.'  In producing MilSpec AFFF, Tyco has acted under the authority of the DoD,

3    which is not a regulatory agency and does not 'regulate' Tyco's design and manufacture of

4    MilSpec AFFF but, instead, dictates essential features of that product." (*Id.* at 14-15.)  As

5    for Plaintiffs' fourth argument, Tyco argues that the requisite "causal nexus" exists because

6    "some of the AFFF Mr. Grosch has been exposed to is MilSpec AFFF" and "Tyco's actions

7    in designing and manufacturing MilSpec AFFF plausibly played a role in causing the

8    plaintiff's alleged injuries. . . .  Under military specifications that Tyco must comply with,

9    MilSpec AFFF is required to contain PFAS.  Thus, Tyco's compliance with federal

10   directives has caused its MilSpec AFFF to contain PFAS and, according to Plaintiffs, that

11   PFAS has caused Mr. Grosch's cancer.  The nexus between Tyco's conduct under color of

12   federal authority and Plaintiffs' claims could scarcely be any clearer." (*Id.* at 15-16.)  As

13   for Plaintiffs' fifth argument, Tyco contends that it has articulated a "colorable federal

14   defense" because it has "allege[d] that it manufactured MilSpec AFFF in conformity with

15   reasonably precise military specifications, and that the government was aware of the

16   relevant alleged hazards of PFAS in the product." (*Id.* at 16-17.)  Finally, Tyco does not

17   directly address Plaintiffs' sixth argument, which is that the federal connection is too

18   attenuated.

19        In reply, Plaintiffs begin by addressing their second argument.  (Doc. 10 at 2-3.)

20   Plaintiffs contend that the FAC "specifically pled that Matthew Grosch had no exposure to

21   MilSpec foam and was not suing for damages based on exposure to MilSpec foam" and

22   argue that "[t]his was not merely a conclusory pleading." (Doc. 10 at 2-3.)  Plaintiffs

23   further contend that "[i]t is of course hornbook law that the Plaintiff is the 'master of the

24   complaint'" and "[t]here is nothing suspect about a plaintiff pleading around federal

25   jurisdiction." (*Id.* at 3.)  Plaintiffs argue that the FAC "does not implicate use of MilSpec"

26   and "[t]hus Tyco's conduct in supplying MilSpec AFFF, just as in *Young*, has no

27   connections to the claims actually asserted in [the FAC]." (*Id.*)  Next, in relation to their

28   first argument, Plaintiffs argue that the evidence proffered by Tyco does not satisfy Tyco's

1    burden of showing by a preponderance of the evidence that Grosch was exposed to MilSpec

2    AFFF. (*Id.* at 3-6.) Turning to their third argument, Plaintiffs argue that removal may be

3    appropriate when a contractor manufactures equipment "for the government," but here

4    "Tyco manufactured firefighting foam that was used by a civilian fire-fighting department,

5    not the federal government." (*Id.* at 6-7.) Plaintiffs also reiterate their contention that

6    Tyco's evidence shows, at most, that Tyco was complying with government regulations.

7    (*Id.*) Finally, Plaintiffs briefly reiterate their arguments as to why Tyco cannot satisfy the

8    "causal nexus" and "colorable federal defense" requirements. (*Id.* at 7-8.)

9          C.    **Analysis**

10         The Court agrees with Plaintiffs that, for at least three reasons, this case is not

11    subject to removal pursuant to the federal officer removal statute. The first reason is that,

12    in light of Plaintiffs' theory of liability as expressed in the FAC and further refined in the

13    motion-to-remand briefing, Plaintiffs are not seeking to hold Tyco liable for the design,

14    manufacture, and distribution of MilSpec AFFF. Instead, Plaintiffs are seeking to hold

15    Tyco liable for the design, manufacture, and distribution of other forms of AFFF. Given

16    that narrow theory of liability, Tyco's argument that it may be able to raise a federal defense

17    to any product liability claim arising from its design, manufacture, and distribution of

18    MilSpec AFFF—and that it should be allowed the remove this action to federal court so it

19    may pursue such a defense—is a red herring.

20         In *Young*, the court encountered an analogous situation. There, a Phoenix Fire

21    Department firefighter who developed testicular cancer sued Chemguard, a manufacturer

22    that supplied AFFF to the Phoenix Fire Department, under various product liability

23    theories. 2021 WL 2070445 at *1-2. Chemguard, in turn, attempted to remove the case

24    under the theory that it had also supplied MilSpec AFFF to the military and the plaintiff's

25    injuries may have been caused by exposure to "toxic chemicals in the City of Goodyear's

26    water supply . . . [that] likely came from Chemguard's AFFFs used at Luke Air Force

27    Base." *Id.* at *1. The court concluded that this allegation, even if true, didn't support

28    removal because the plaintiff was only attempting to hold Chemguard liable for the AFFF

1    it provided to the Phoenix Fire Department and was not attempting to hold Chemguard

2    liable for the MilSpec AFFF it supplied to Luke Air Force Base: "[U]nder Ninth Circuit

3    caselaw, 'a party seeking removal under section 1442 must demonstrate that . . . there is a

4    causal nexus between its actions, taken pursuant to a federal officer's directions, and

5    plaintiff's claims.'  In other words, the defendant cannot manufacture a claim that does not

6    already exist in the complaint, so that the defendant can then assert a federal defense to that

7    claim to serve as a basis for federal jurisdiction."  *Id.* at \*2 (citation omitted).  The Ninth

8    Circuit affirmed.  *Young v. v. Tyco Fire Prod., LP*, 2022 WL 486632, \*2 (9th Cir. 2022)

9    ("Chemguard has failed to plausibly allege [a causal] nexus in its notice of removal. . . .

10   The non-conclusory allegations—for example, '[t]he public water supply in the City of

11   Goodyear contains or contained [carcinogens] that likely originated in part from AFFF

12   used at Luke Air Force Base'—propose an alternative theory of causation that the Youngs

13   have expressly disavowed.  Thus, the Youngs will have to prove that Mr. Young's direct

14   exposure to commercial AFFFs as a firefighter caused his cancer; this claim has no causal

15   nexus to contamination of Goodyear's groundwater by MilSpec AFFFs.").

16          The Court acknowledges that *Young* is not directly on point.  There, the

17   manufacturer sought to argue that the MilSpec AFFF it supplied to an entirely different

18   client, the military, was the cause of the plaintiff's cancer, whereas here Tyco supplied both

19   MilSpec AFFF and other forms of AFFF to the Phoenix Fire Department and one of the

20   disputed questions is whether Plaintiff's cancer was caused by exposure to either or both

21   of those forms of AFFF.  Nevertheless, the principle to be derived from *Young* is that a

22   plaintiff is entitled to choose his theory of liability and removal is permissible under the

23   federal officer removal statute only if the defendant-manufacturer may be entitled to raise

24   a federal defense to the plaintiff's chosen liability theory.  Accordingly, the outcome here

25   ultimately turns on the scope of Plaintiffs' liability theory.

26          The FAC is, unfortunately, somewhat ambiguous on this issue.  Although the FAC

27   goes out of its way to allege that Grosch was never exposed to MilSpec AFFF,[3] it doesn't

28   ─────────────
     [3]      Paragraphs 50-53 of the FAC provide as follows: "The fire stations servicing the
     Phoenix-area airports had specific 'crash trucks' that are designated solely for fighting

expressly disavow any claim for recovery premised on exposure to MilSpec AFFF. Instead, it broadly seeks to hold Defendants (including Tyco) liable for "suppl[ying] AFFFs, either on a manufacturer or distributor basis, to the Phoenix Fire Department that employs [Grosch]." (Doc. 2 ¶ 3.) Thus, if the FAC were the only document before the Court touching on this issue, the Court would be inclined to agree with Tyco that Plaintiffs' allegations potentially implicate a federal defense (because the FAC makes it possible for Tyco to be held liable for the manufacture, design, and distribution of MilSpec AFFF).

But the FAC is not the only document touching on this issue. During the motion-to-remand briefing process, Plaintiffs made a number of additional statements regarding their liability theory. First, in their motion, Plaintiffs likened this case to *Young*, which they described as a case precluding removal where "Plaintiffs deliberately chose only to allege exposure via the firefighting AFFFs," and emphasized that "Grosch only alleged exposure via non-MilSpec Class B firefighting foams." (Doc. 6-1 at 5-6.) Second, in their reply, Plaintiffs went even further in disavowing any claim for relief premised on exposure to MilSpec AFFF, by clarifying that the FAC "*specifically pled that Matthew Grosch . . . was not suing for damages based on exposure to MilSpec foam*," emphasizing that "[t]his was not merely a conclusory pleading," and stating that the FAC "does not implicate use of MilSpec AFFF" and "[t]hus Tyco's conduct in supplying MilSpec AFFF, just as in *Young*, has no connections to the claims actually asserted in [the FAC]." (Doc., 10 at 2-3, emphasis added.)

Under these circumstances, the Court concludes that Plaintiffs have expressly disavowed any claim for relief premised on exposure to MilSpec AFFF.[4] This disavowal,

---

aircraft fires. The crash truck for the Phoenix-area airports contained MilSpec AFFF. The fire stations servicing the Phoenix-area airports also house engines used to fight residential and commercial fires. Although these non-airport engines used AFFFs, they were not used to fight aircraft fires and therefore did not have MilSpec AFFF. Firefighters who regularly expect to fight aircraft fires obtain an Aircraft Rescue Firefighting ('ARF') certification. [Grosch] was not ARF certified at any time prior to his diagnosis and never fought aircraft fires. When [Grosch] was stationed at the fire stations servicing the Phoenix-area airports, he worked exclusively on the trucks that were designated for residential and commercial firefighting, which did not hold MilSpec AFFF. During his professional career, [Grosch] cannot recall ever interacting with MilSpec AFFF." (Doc. 2 at 10.)

[4]    Although the better course of action would have been for Plaintiffs to file a formal,

1   in turn, moots Tyco's removal attempt.  Again, Tyco would potentially be entitled to

2   remove this action under § 1442 only if it had a colorable federal *defense* to Plaintiffs'

3   claims.  But given Plaintiffs' now-clarified narrow theory of liability, any evidence that

4   Grosch was exposed to MilSpec AFFF would be *beneficial* to Tyco, because it would tend

5   to negate Grosch's theory that the other forms of AFFF designed and supplied by Tyco

6   caused him to develop cancer.  A remand is required under these circumstances.  *See, e.g.,*

7   *Maine v. 3M Co.*, 2023 WL 4758816, *10 (D. Me. 2023) ("[Plaintiff's] disclaimer is

8   express, unambiguous, and plain, and in the Court's view, fits within the category of

9   express disclaimers courts have found effective to justify a remand order. . . .  [B]y its

10  disclaimer, [plaintiff] has taken upon itself the burden as part of its case to demonstrate that

11  the source of contamination in its Non-AFFF lawsuit is not a AFFF source.  If the factfinder

12  concludes that [plaintiff] has failed to meet its burden concerning the source, 3M will

13  prevail.  This effectively means that the federal officer defense will not be applicable in

14  [plaintiff's] Non-AFFF lawsuit because [plaintiff] by its express disclaimer has imposed

15  upon itself a burden to demonstrate that its claim involves Non-AFFF sources.  In sum,

16  because of [plaintiff's] express disclaimer, the Court concludes that this case must be

17  remanded to the state of Maine Superior Court since the federal officer defense is not

18  applicable."); *Hayden v. 3M Co.*, 2015 WL 4730741, *3-4 (E.D. La. 2015) (granting

19  motion to remand, where plaintiff testified during his deposition that he may have been

20  exposed to asbestos during his time in the military, the asbestos manufacturer then removed

21  the case pursuant to § 1442 based on the plaintiff's deposition testimony, and the plaintiff

22  then clarified that he was disavowing any claim for recovery based on military exposure,

23  because "[t]he Court sees no reason to disbelieve the Haydens' explicit renunciation of any

24  _____

25  standalone document memorializing their waiver of any claims premised on exposure to
    MilSpec AFFF, as plaintiffs have done in analogous cases, *see, e.g., Kelleher v. A.W.*
    *Chesterton Co.*, 2015 WL 7422756, *1 (S.D. Ill. 2015) ("Plaintiff also filed a "Notice of

26  Disclaimer of Certain Alleged Exposures to Asbestos as the Basis for Any Causes of
    Action or Relief" in state court."), in the Court's view it would put form over substance to

27  ignore the disclaimer in Plaintiffs' reply brief due to the manner in which it was presented.
    Again, Plaintiffs expressly and unambiguously stated that they are "not suing for damages

28  based on exposure to MilSpec foam" and that the FAC "does not implicate use of MilSpec
    AFFF."  (Doc. 10 at 2-3.)

1    claims arising from Thomas Hayden's military service").[5]

2            Tyco's removal attempt also fails for a second and independent reason—regardless

3    of the contours of Plaintiffs' liability theory, Tyco has not adequately demonstrated that it

4    was "acting under" a federal officer in relation to the conduct at issue in this case.  Under

5    Ninth Circuit law, Tyco has the "burden of proving by a preponderance of the evidence

6    that [it was] 'acting under' a federal officer." *Cnty. of San Mateo*, 32 F.4th at 760.  "The

7    words 'acting under' are broad, and [the Supreme] Court has made clear that the [federal

8    officer removal] statute must be 'liberally construed.'"  *Watson*, 551 U.S. at 147.  "But

9    broad language is not limitless.  And a liberal construction nonetheless can find limits in a

10   text's language, context, history, and purposes."  *Id.*  Acting under a federal officer

11   typically involves "subjection, guidance, or control" and "must involve an effort to assist,

12   or to help carry out, the duties or tasks of the federal superior."  *Id.* at 151-52 (emphasis

13   omitted).  "[T]he help or assistance necessary to bring a private person within the scope of

14   the statute does not include simply complying with the law."  *Id.* at 152 (emphasis omitted).

15   "A private firm's compliance . . . with federal laws, rules, and regulations does not by itself

16   fall within the scope of the statutory phrase 'acting under' a federal 'official.'  And that is

17   so even if the regulation is highly detailed and even if the private firm's activities are highly

18   supervised and monitored."  *Id.* at 153.  "[D]etailed rules," "specifications,"

19   "requirements," "and the like" generally amount to "regulation" and do not bring a private

20   actor within the scope of the federal officer removal statute.  *Id.* at 157.

21          The Ninth Circuit has "identified four factors to determine whether a person was

22   'acting under' a federal officer: (1) working under an officer in a manner akin to an agency

23   relationship, (2) being subject to the officer's close direction, such as acting under the

24   guidance, or control of the officer or having an unusually close relationship involving

25   detailed regulation, monitoring, or supervision, (3) helping fulfill basic [federal]

26   governmental tasks, and (4) conducting activities so closely related to the government's

27

28   _____
     [5]    This conclusion makes it unnecessary to resolve the parties' dispute over whether Grosch's deposition testimony in fact shows that he was exposed to MilSpec AFFF.

1    implementation of its federal duties that the person faces a significant risk of state-court

2    prejudice." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022)

3    (cleaned up).  Consideration of these factors compels the conclusion that Tyco did not act

4    under a federal officer for purposes of the conduct at issue in this lawsuit.

5          Tyco emphasizes that "[t]he formulation and manufacture of MilSpec AFFF are

6    governed by rigorous military specifications created and administered by Naval Sea

7    Systems Command ('NAVSEA'), a unit of the DoD," but these specifications appear to

8    generally apply to any manufacturer that seeks to supply MilSpec AFFF to the military,

9    including all four Defendants here.  This suggests there was no "agency relationship" or

10   "unusually close relationship" between the federal government and each supplier.

11   Although each military supplier was bound by a set of "rigorous military specifications,"

12   such "specifications" generally fall into the category of "regulation."  *Watson*, 551 U.S. at

13   157.  "A private firm's compliance . . . with federal laws, rules, and regulations does not

14   by itself fall within the scope of the statutory phrase 'acting under' a federal 'official' . . .

15   even if the regulation is highly detailed and even if the private firm's activities are highly

16   supervised and monitored."  *Id.* at 153.

17         Similarly, although Tyco asserts that "a manufacturer's products" must be

18   "examined, tested, and approved to be in conformance with specification requirements,"

19   that a qualified product gets added to a list and then "NAVSEA periodically reviews the

20   product's qualifications to ensure that it meets the requirements set out in the

21   specifications," and that "Tyco and other firms have manufactured and distributed MilSpec

22   AFFF in compliance with the DoD specifications" (Doc. 9 at 5), such assertions again show

23   that each firm was merely complying with generally applicable specifications when

24   designing MilSpec AFFF.  Language that "explicitly denotes compliance" suggests that

25   there was no "acting under" relationship.  *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981,

26   988–89 (9th Cir. 2019).

27         Turning to the other factors identified in *Sunoco*, Tyco was not "helping" the

28   government, as that word is used by the Supreme Court in this context.  *Watson*, 551 U.S.

at 152 ("[T]he help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law.") (emphasis omitted). And the risk of state-court prejudice appears non-existent in this circumstance. "When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice.'" *Id.*

Nor is there any merit to Tyco's assertion that "[c]ourts have 'unhesitatingly' treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured in accordance with military specifications." (Doc. 9 at 13.) Tyco cites *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017), as a case that supports that proposition, but there the court stated that "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* at 255 (emphasis in original). Manufacturing a product "in accordance with military specifications," as Tyco did here, is not the same thing as manufacturing a product *for* the military. Additionally, the Fourth Circuit later clarified that the contractor must be subject to "intense direction and control"—simply being subject to "specifications" that "required compliance" is insufficient. *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 230-31 (4th Cir. 2022).[6]

Tyco also cites *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. 2018). There, the court determined that the many of the defendants—including three of the Defendants in this action, Tyco, Kidde, and National Foam—"were 'acting under' the [Department of Defense] when producing Mil-Spec AFFF." *Id.* at *8. But that decision was based in part

---

[6]     Tyco also cites *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2019 WL 2807266, *2 (D.S.C. 2019), for the proposition that "[b]ecause the U.S. military accepts and tests AFFF products against military specifications . . . , Tyco has demonstrated that it was manufacturing the product under the U.S. military's guidance." However, that case was decided before *BP P.L.C.* and merely cites *Sawyer*, with no further analysis. Similarly, to the extent the Third Circuit's decision in *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016), supports the proposition that any federal government contractor is necessarily "acting under" a federal officer or agency, the Court does not find this conclusion persuasive in light of *Watson*. So too with *Nessel v. Chemguard, Inc.*, 2021 WL 744683, *3 (W.D. Mich. 2021).

on a memorandum report from the U.S. Naval Research Laboratory ("NRL"), which developed AFFFs in the 1960s, stating that "[a]lthough NRL was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations" and that The 3M Company ("3M") "contributed considerably to the success of the development of AFFF." *Id.*  Here, 3M is not a defendant.  Although the NRL may have found it "necessary to elicit the aid of the chemical industry," it does not follow that this created an agency relationship with every firm in that industry.  At a minimum, Tyco has failed to establish on this record that it, specifically, contributed considerably to the success of the development of MilSpec AFFF.

Finally, a third reason why Tyco's removal attempt fails is that, even if Plaintiffs were attempting to hold Tyco liable for the design, manufacture, and distribution of MilSpec AFFF (which they are not) and even if Tyco had adequately established that it was "acting under" the military with respect to the design of MilSpec AFFF (which it has not established), Tyco has failed to established the requisite "causal nexus" between its conduct undertaken at the direction of the military and the conduct at issue in this lawsuit. The Court acknowledges that "the hurdle erected by the causal-connection requirement is quite low" and that a defendant "need show only that the challenged acts occurred because of what [the defendant was] asked to do by the Government." *Goncalves By and Through Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237, 1244-45 (9th Cir. 2017) (cleaned up).  Even so, Tyco has not satisfied that minimal requirement here.  Although Tyco asserts in conclusory fashion that "[a]ll MilSpec AFFF is military equipment, no matter where or by whom it is used" (Doc. 9 at 5), there is no evidence that the military has mandated that AFFFs supplied to non-federal entities (such as municipal fire departments like the Phoenix Fire Department) must conform to military specifications.  If Tyco's contention is that it provided the exact same product to the Phoenix Fire Department that it previously designed for and provided to the military, that choice—*i.e.*, a choice not to redesign an already-designed product but rather to use that already-designed product as

1   a commercially available stock product—was a business decision, not a decision compelled

2   by the military.  The product that Tyco supplies to non-military clients may be dubbed

3   "MilSpec" AFFF, but mere nomenclature cannot supply the requisite causal nexus.  *Cf.*

4   *Graves v. 3M Company*, 17 F.4th 764 (8th Cir. 2021) (agreeing with the district court's

5   determination that it "would be hard-pressed to find that 3M could reasonably say 'the

6   government made me do it'" in relation to commercial sales of a product originally

7   designed for the military).  The bottom line is that Tyco was not doing what it was "asked

8   to do by the Government," *Goncalves*, 865 F.3d at 1245, when it chose, decades after

9   MilSpec AFFF was initially designed for and supplied to the military, to supply a product

10  that met MilSpec AFFF's design specifications to the Phoenix Fire Department.

11          Given these conclusions, it is unnecessary to reach the "colorable federal defense"

12  prong of the jurisdiction analysis.  *San Mateo*, 32 F.4th at 760.  Plaintiffs' remand request

13  is granted.

14  II.     Rule 62(a) 30-Day Stay

15          Tyco filed a motion, conditioned on the Court's determination that remand is

16  appropriate, for a stay from remand under Rule 62(a), which provides for an automatic 30-

17  day stay of execution on a judgment unless the Court orders otherwise.  (Doc. 11.)

18  Plaintiffs did not file an opposition.  The motion is granted.  28 U.S.C. § 1447(d) ("An

19  order remanding a case to the State court from which it was removed is not reviewable on

20  appeal or otherwise, except that an order remanding a case to the State court from which it

21  was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal

22  or otherwise."); *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1536-

23  37 (2021) ("Congress has deemed it appropriate to allow appellate review before a district

24  court may remand a case to state court" when the case "was removed pursuant to section

25  1442."); LRCiv 7.2(i) (unopposed motions may be summarily granted).

26          …

27          …

28          …

1    Accordingly,

2         **IT IS ORDERED** that Plaintiffs' motion to remand (Doc. 6) and Tyco's motion to

3    stay remand for 30 days (Doc. 11) are **granted**.

4         Dated this 15th day of September, 2023.

5

6

7                                                    _____
                                                     Dominic W. Lanza
8                                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28